# UNITED STATES DISTRICT COURT

for the

Southern District of Illinois

FILED

JUN - 3 2015

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

DENNIS J. HOPPES,

*Petitioner*

(the name under which you were convicted)

v.

GREGORY SCOTT, Program Director, Rushville Treatment/Detention Facility-IDHS,

*Respondent*

(authorized person having custody of Petitioner)

Case Number: 15-610-DRH

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

**Personal Information**

1. (a) Your full name: DENNIS J. HOPPES

   (b) Other names you have used: none

2. Place of confinement:

   (a) Name of institution: Rushville Treatment & Detention Facility-Il. Dept. Human Services

   (b) Address: 17019 County Farm rd. Rushville, Il 62681

   (c) Your identification number: 837815

3. Are you currently being held on orders by:

   ☐ Federal authorities  ☒ State authorities  ☐ Other - explain:

   I am a civilly committed mental health patient being held under involuntary civil commitment pursuant to the Illinois Sexually Violent Person's Act 725 ILCS §207/1 et se

4. Are you currently:

   ☐ A pretrial detainee (waiting for trial on criminal charges)

   ☐ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime

   If you are currently serving a sentence, provide:

   (a) Name and location of court that sentenced N/A

   (b) Docket number of criminal case: N/A

   (c) Date of sentencing:

   ☐ Being held on an immigration charge

   ☒ Other *(explain)*: As stated above, I am a civilly committed mental health patient. There ar no current or pending criminal charges of any sort.
   While the State statute I am held under purports to be civil in nature so as to avoid ex post facto/double jeapordy prohibitions, in reality, the State of Illinois has created a parallel prison system under the guise of civil confinement.

**Decision or Action You Are Challenging**

5. What are you challenging in this petition:

   ☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits) N/A

❒ Pretrial detention

❒ Immigration detention

❒ Detainer

❒ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

❒ Disciplinary proceedings

XX☒ Other *(explain)*: My civil confinement is unconstitutional for a variety of reasons including violation of the US Supreme Courts decisions in Kansas v. Hendricks & Kansas v. Crane as well as In Re: Winship where essential elements required for this civil confinement are absent.

6. Provide more information about the decision or action you are challenging:

(a) Name and location of the agency or court: Circuit Court of St. Clair County, Illinois St. Clair County Courthouse Belleville, Illinois

(b) Docket number, case number, or opinion number: 99 MR 197

(c) Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:

Order of civil commitment under 725 ILCS §207/1 et seq., and all related proceedings resulting therefrom.

(d) Date of the decision or action: Self committed on June 15, 1999 based on advice of then appointed counsel.

### Your Earlier Challenges of the Decision or Action

7. **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

❒ Yes x☒ No **THERE HAVE BEEN NO APPEALS OR COLLATERAL ATTACKS. THERE IS NO STATE COURT REMEDY OR STATUTE TO OVERTURN AN SVPCA VERDICT OBTAINED AS A RESULT OF "SELF COMMITMENT".**

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:

N/A

(2) Date of filing:

(3) Docket number, case number, or opinion number:

(4) Result:

(5) Date of result:

(6) Issues raised:

(b) If you answered "No," explain why you did not There was no appeal/I self committed only after appointed counsel **misinformed me** that this civil commitment could last no more than ~~2-years. My civil commitment has now lasted over 180-months and I have no state~~ court remedy. State Habeas is only for jurisdictional issues; Post Conviction requires that I be imprisoned in the penitentiary and; a 2-1401 Relief From Judgement must be filed within 2-years of the decision.

8. **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

❒ Yes ❒ No N/A

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:

(2) Date of filing:

(3) Docket number, case number, or opinion number:

(4) Result:

(5) Date of result:

(6) Issues raised:

(b) If you answered "No," explain why you did not file a second appeal:

N/A

9. **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

❒ Yes ❒ No N/A

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:

(2) Date of filing:

(3) Docket number, case number, or opinion number:

(4) Result:

(5) Date of result:

(6) Issues raised:

(b) If you answered "No," explain why you did not file a third appeal:

N/A

10. **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

❒ Yes ❒ No N/A. There is no conviction or sentence. My confinement is entirely premised on a civil, mental health statute.

If "Yes," answer the following:

(a) Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

❒ Yes ❒ No N/A

If "Yes," provide:

(1) Name of court: ______

(2) Case number: ______

(3) Date of filing: ______

(4) Result: ______

(5) Date of result: ______

(6) Issues raised: ______

(b) Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

❒ Yes XX☒ No

If "Yes," provide:

(1) Name of court: N/A

(2) Case number: ______

(3) Date of filing: ______

(4) Result: ______

(5) Date of result: ______

(6) Issues raised: ______

(c) Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence: N/A

N/A

11. **Appeals of immigration proceedings**

Does this case concern immigration proceedings? N/A

❒ Yes ❒ No

If "Yes," provide:

(a) Date you were taken into immigration custody:

(b) Date of the removal or reinstatement order:

(c) Did you file an appeal with the Board of Immigration Appeals?

❒ Yes ❒ No

If "Yes," provide:

(1) Date of filing: N/A

(2) Case number:

(3) Result:

(4) Date of result:

(5) Issues raised:

(d) Did you appeal the decision to the United States Court of Appeals?

❒ Yes ❒ No N/A

If "Yes," provide:

(1) Name of court:

(2) Date of filing:

(3) Case number:

(4) Result:

(5) Date of result:

(6) Issues raised:

12. **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes XXX☒ No There are no state statutes available to me to over-turn my civil confinement adjudication.

If "Yes," provide:

(a) Kind of petition, motion, or application: N/A

(b) Name of the authority, agency, or court:

(c) Date of filing:

(d) Docket number, case number, or opinion number:

(e) Result:

(f) Date of result:

(g) Issues raised:

**Grounds for Your Challenge in This Petition**

13. State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE**: The US Supreme Court Requires that the State prove a lack of ability to control dangerous sexual behavior for this type of civil confinement. (Kansas v. Hendricks). The State of Illinois has purported to establish this constitutional requirement by claiming the lack of control is "implicit" in the DSM mental disorder diagnosis. The DSM-IV; DSM-IV-TR and DSM-5 completely rejects this premise.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

The Petitioner waived all rights and self committed where his lawyer misinformed him that the State "could prove all requirements at trial" including that "lack of control is implicit in the mental disorder diagnosis from the DSM manual". The DSM-IV at pg. xxxiii and the DSM-5 at pg 25 state "having the diagnosis in itself does not demonstrate that a particular individual is (or was) unable to control his or her behavior at a particular time".(DSM-5 at pg 25). There was never any proof as required by Hendricks that the Petitioner lacked volitional control. As such his confinement is unconstitutional.

(b) Did you present Ground One in all appeals that were available to you?

☐ Yes ☐ No N/A No Appellate or collateral remedies were/are available at time of commitment or present day.

**GROUND TWO:** Under the Illinois SVPCA, the State must prove three elements that are; (1) Qualifying underlying conviction; (2) a Mental Disorder and (3) That **as a result of the mental disorder,** that it is substantially probable the person will re offend. The third element was purportedly proven by the State's "expert's" use of risk assessment tools including "The Mnsost-R" and "The Static-99". These risk assessment too neither detect the presence of nor measure the severity of any mental disorder.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

Under the US Supreme Court's decision of In Re Winship, 397 US 358 (1970), the State is required to prove each statutory element beyond a reasonable doubt. The Petitioner's civil commitment is predicated upon (and has in fact been continued yearly) by use of the above "risk assessment actuarial tools". Attached hereto is an Illinois Dept. of Human Services Freedom of Information Response (IDHS No. #11-2771) wherein the State of Illinois admits that the risk assessments neither detect the presence of nor measure the severity of a mental disorder. The Third element clearly states that "**as a result of th mental disorder it is substantially probable**" the person will engage in future acts of sexual violence. This evidence is faulty. Also attached is correspondence from Dr. Fresk a co-author of MnSost-R stating she is not aware of any actuarial that establishes this.

(b) Did you present Ground Two in all appeals that were available to you?

❒ Yes ❒ No N/A (for same reasons as stated above)

**GROUND THREE:** The SVPCA Defines Mental Disorder under the Act as "congenital or acquire conditions. These are medical terms that can only be diagnosed by medical doctors who have conducted a battery of brain scans (FMRI;MRI; CT Scans etc) and other medical tests **The doctor who proferred the diagnosis upon which Petitioner is confined was NOT an M.D. but rather, a "Psy.D" who could not diagnose these medical conditions.**

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

The Petitioner's confinement is predicated upon a non-medical doctor's diagnosis of a "congenital/acquired" mental abnormality that is required by the SVPCA (see 725 ILCS §207/1 et seq). The non-medical doctor exceeded the limitations of licensure, education and qualifications. The SVPCA now requires all diagnosticians to follow the "S.O.M.B." (Sex Offender Management Board). 20 Ill.Admin.Code §1905.240 requires "medical testing neccesary for diagnosis". The Petitioner's liberty has been taken away from him based o an unqualified diagnosis by an unqualified non-medical doctor. Had appointed counsel at the 1999 proceedings been effective and challenged the State's evidence, the outcome would have been different. The Petitioner does not suffer from any acquired or congenit brain abnormality as is absolutely required by the Act.

(b) Did you present Ground Three in all appeals that were available to you?

❒ Yes ❒ No N/A

**GROUND FOUR:** The Petitioner's Advancing Age and serious debilitating medical conditions constitute new evidence that significantly (and statistically) reduce his likelihood of any form of recidivism. At age 62, every recidivism table places Petitioner's recidivism rate at or under 3%. Adding serious medical conditions into the equation further reduces his purported "risk" well below "substantial probability".

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

The Supreme Court has recognized that the recidivism reducing affect of age and significant health conditions typically associated with advancing age are significant considerations to be looked at by the judicial system. Each year, the State uses the exact same evidence to "re-commit" the Petitioner that stood as the basis for his original civil confinement in 1999 when on advice of appointed ineffective counsel, he was persuaded into waiving his trial rights and accepting a "self commitment" which is/was tantamount to a "civil guilty plea". These cases involved an ever changing dynamic of the human brain and human body that the State courts refuse to acknowledge as evidenced by the absence of any statute by which a commitment can be vacated.

Upon appointment of counsel, medical records will be obtained for consideration by this honorable court as well as statistical tables demonstrating drastic reductions in recidivism rates for persons over 60 years of age. (Petitioner's D.O.B. is 3/7/53)

(b) Did you present Ground Four in all appeals that were available to you?

❐ Yes ❐ No N/A See above

14. If there are any grounds that you did not present in all appeals that were available to you, explain why you did not: N/A (see explanation hereinabove)

**Request for Relief**

15. State exactly what you want the court to do:

1). Appoint counsel to assist the Petitioner in obtaining evidence supportive of the claims raised herein and;

2). That the Court find the State of Illinois has unconstitutionally deprived the Petitioner of his Constitutional right to liberty by use of completely foundationless evidence that does not meet the Statutory or Supreme Court requirements that MUST be established to take a human beings freedom away.

3). That because of the Petitioner's advancing age and health conditions, that this matter be placed on accellerated docket status" and;

4). For any other relief as deemed fit and proper by this Honorable Court.

(note; attached hereto as evidence supporting this Petition; (1) An IDHS FOIA Reply where the State admits the risk assessments tools do not detect nor measure the presence or severity of any mental disorder; (2) Correspondence from Dr. Pamela Freske, one of the authors of the "MnSOST-R" actuarial tool, stating that she "is not aware of any actuarial that would measure the severity of a sexual disorder diagnosis"; (3) A copy of Illinois Appellate Court decision in People v. Gilford, No. 1-01-0695 (1st Dist. 2005) citing to the DSM-IV-TR wherein at pg. xxxiii it states that having a DSM diagnosis "does not" imply any lack of control over one's conduct because of the diagnosis"). Additional exhibits will be submitted if counsel is appointed.

**Declaration Under Penalty Of Perjury**

If you are incarcerated, on what date did you place this petition in the prison mail system:

______________________________

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: 5-7-15

Dennis Hopper

*Signature of Petitioner*

*Signature of Attorney or other authorized person, if any*



DHS
Illinois Department of Human Services

Pat Quinn, *Governor*

Michelle R.B. Saddler, *Secretary*

100 W. Randolph, Suite 6-400, Chicago, Illinois 60601

October 20, 2011

Mr.
1680 E. County Farm Road
Rushville, IL. 62681

Re: Freedom of Information Request #11-2771

Dear Mr.

Thank you for writing to DHS with your request for information pursuant to the Illinois Freedom of Information Act, 5 ILCS 140/1 et seq. The following is the Department's response to your request.

1. What is the specific name or title of the form of Sex Offender Treatment being implemented at the Rushville Treatment and Detention Facility (hereinafterreferred to as "the TDF")for patients diagnosed with "Paraphilia-Not Otherwise Specified-Nonconsent" and;

**All sex offender treatment plans are individualized based upon the needs of the person. What has been traditionally referred to as "CORE" treatment is based upon the cognitive restructuring/relapse prevention model. All treatment professionals employed at the TDF are required to be approved by the Illinois Sex Offender Management Board ("SOMB") or supervised by persons approved by the SOMB. Sex Offender treatment at the TDF is contracted to Liberty Healthcare Corporation.**

a). Please identify the authors or developers of the Sex Offender Treatment for the mental disorder known as "Paraphilia-Not Otherwise Specified- nonconsent and if known, any peer-reviewed publication, treatise or other scientific or medical publication that has validated the method of treatment for this specific disorder?, and;

**The Department does not have any information Responsive to your request. The requested information is not a public record since the information is not in the custody or possession of the Department. Further, the requested information does not pertain to the transaction of public business and therefore is not the proper subject of a Freedom of Information Request.**

b). Has the specific Sex Offender treatment program or method(s) being used by IDHS staff at the Rushville TDF being used to treat persons with the alleged mental disorder of Paraphilia- or Otherwise Specified-on consent" been accepted or approved by the American Psychiatric Association or the American Psychological Association and if so, please provide me with a copy of any document demonstrating that the TDF mod of treatment for the above specified mental disorder has been approved by either of the A.P.A.'s or any other mental health board, and;

**See response to question 1**

. The Sexually Violent Person's Commitment Act has certain limitations that have been imposed by the United tates Supreme Court in Kansas v. Hendricks and Kansas v Crane. Pursuant to these cases, a person subject to ivil commitment under the Act "must suffer from a special and serious inability to control sexually violent ehavior Please provide me with any information, either by written answer or documents any information, ıedical study, medical journal or publication demonstrating that the alleged mental disorder "Paraphilia Not )therwise Specified-Nonconsent is a disorder that causes a person diagnose with it to suffer from special and erious inability to control sexually violent behavior?"

**[he Department does not have any information Responsive to your request. The requested nformation is not a public record since the information is not in the custody or possession of the )epartment. Further, the requested information does not pertain to the transaction of public business ınd therefore is not the proper subject of a Freedom of Information Request.**

2. The Illinois SVP Act defines mental disorders that would qualify a person for IDHS/TDF commitment as "an acquired or congenital condition that makes it substantially probable that the individual will engage in future acts of sexual violence" Please provide me with documents or explanatory response what scientific or medical evidence the Department, its TDF Clinicians, treatment providers and SVP Evaluators that validates or provides a basis upon which these IDHS employees rely in determining that the alleged mental disorder of "Paraphilia-Not Otherwise Specified-Nonconsent is a congenital disorder?;

**All civil commitments at the TDF occur via the Illinois courts pursuant to the Sexually Violent Persons Commitment Act [725 ILCS 207/1 *et seq.*] (the "Act"). Under the Act, a respondent is found to be a "sexually violent person" by either the judge at a bench trial or by a jury based upon evidence provided by the State and the defense. The State must prove their case beyond a reasonable doubt. Under the Act, the Department of Human Services does not determine a person's status as a "sexually violent person."**

3). Please respond to me with the information regarding actuarial risk assessment used by the IDHS Evaluators who perform SVP mental health evaluations pursuant to various sections of the S V P Act (including 725 ILCS 207/30; 207/55, 60 and 65) as follows;

a). Does the Static-99, Static-99R, Static-2003 or any version of the Static 99 measure the severity of a mental disorder?;
**No these tools measure risk of recidivism.**

b). Does the MnSost-R measure the severity of a mental disorder?
**No these tools measure risk of recidivism**

c). Do either of the above specified risk assessment tools determine the severity, symptomology or any other aspect or specific level of lack of ability to control conduct when a diagnosis of Paraphilia-Not Otherwise Specified-Nonconsent is the mental disorder being addressed?;
**No these tools do not rely on a specific diagnosis to assess recidivism.**

**4). If a patient at the Rushville TDF suffers from congenital Paraphilia-Not Otherwise Specified-Nonconsent, would the TDF Clinician's offer a treatment regimine that differs from an "acquired" Paraphilia-Not Otherwise Specified-Nonconsent?**

a). By what medical or scientific process do IDHS SVP Evaluators determine whether the Paraphilia-Not Otherwise Specified-Nonconsent is congenital or acquired? Please detail this process or method and provide me

documents establishing the medical or scientific manner that an acquired disorder is differentiated from one that is congenital (specific to Paraphilia-Not Otherwise Specified nonconsent)?
**Please see response to question 1 and 2 above**

Thank you for your interest in the Department of Human Services.

Sincerely,

Patricia M. Brown
Assistant General Counsel

**Central Office**
1450 Energy Park Drive ▪ St. Paul, MN 55108
PH 651.361.7200 ▪ TTY 800.627.3529 ▪ Fax 651.642.0223
www.doc.state.mn.us

November 25, 2013

[redacted]
Illinois Department of Human Services
Treatment and Detention Facility
1680 E. County Farm Road
Rushville, Illinois 62681

In response to your letter, the MnSOST-R and MnSOST-3.1.2 are very different instruments, and we have not offered a "sunset" date for the MnSOST-R. Because the MnSOST-3.1.2 has not been validated and normed outside of Minnesota, while the MnSOST-R has demonstrated stability in multiple validation studies, it is our understanding that many clinicians are choosing to continue to use the MnSOST-R. Which instrument a clinician chooses to reply upon is a matter of clinical judgment, and reasonable arguments can be made for using either instrument.

The difference between the Static-99 and the Static-99R is modest. It's certainly true that the developers have recommended that clinicians switch to the Static-99R. However, reasonable clinicians have pushed back against this recommendation, noting that there are many peer reviewed studies that have been published using the Static-99, and it cannot be assumed that all of these studies support the Static-99R. While I have personally switched to using the Static-99R, I would be very hesitant to criticize a colleague who chose to continue using the Static-99. How much data clinicians require before making changes to what actuarial measure they use is a complex clinical decision, and given that reasonable arguments can be made both for and against this change, it feels reasonable to use the measure one feels most comfortable using, while respecting that colleagues can reasonably make alternative choices.

The MnSOST-R and MnSOST-3.1.2 can both be used with offenders serving very lengthy sentences. There were offenders with lengthy sentences in the development sample for both instruments, and it appeared reliable with this population. I am not aware of any actuarial that would measure the severity of a sexual disorder diagnosis. Actuarial measures are designed to determine whether an offender is similar to offenders who re-offend at low, moderate, or high rates.

I trust this addresses your questions. Best of luck to you, Mr. Lieberman.

[signature] PhD, ABPP, LP

Pamela J. Freske, Ph.D., ABPP, LP
Board Certified in Clinical Psychology

Second Division
September 27, 2005

No. 1-01-0695

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee | ) | |
| v. | ) | No. 95 C4 41108 |
| MICHAEL GILFORD, | ) | Honorable Themis N. Karnezis, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HALL delivered the opinion of the court:

Following a jury trial, defendant Michael Gilford was convicted of two counts of criminal sexual assault and two counts of criminal sexual abuse of T.A., and was subsequently sentenced to two consecutive 30-year terms of imprisonment. After the trial court denied his posttrial motions, defendant filed a timely notice of appeal.

On direct appeal, we reversed defendant's conviction and remanded the matter for retrial. *People v. Gilford*, No. 1-98-1346 (1999) (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)). We found that although the State's evidence was sufficient to find defendant guilty of criminal sexual assault and criminal sexual abuse beyond a reasonable doubt, certain trial court errors denied defendant a fair trial and needed to be cured upon remand.

The matter was remanded to the trial court, and approximately two months before defendant's criminal trial was to begin, the State filed a civil commitment petition to have him declared a sexually dangerous person pursuant to section 1.01 of the Illinois Sexually Dangerous Persons Act (Illinois SDPA) (725 ILCS 205/1.01 (West 1996))[(1)]. Pursuant to the State's petition, the trial court conducted a hearing to ascertain if defendant was a sexually dangerous person subject to civil commitment under the Illinois SDPA.

After considering the evidence, expert testimony, and closing arguments on the matter, the trial court determined that defendant was a sexually dangerous person, and the court remanded him to the custody of the Illinois Department of Corrections. Defendant timely appealed, contending that: (1) the Illinois SDPA was unconstitutional; (2) the trial court erred in finding the evidence sufficient to declare him a sexually dangerous person; and (3) the State improperly used the Illinois SDPA for retribution when, during the pendency of defendant's criminal proceeding, the State elected to seek his civil commitment as a sexually dangerous person under the SDPA, rather than proceed with the pending criminal prosecution.

On December 24, 2002, we filed an opinion vacating the trial court's judgment and remanding the matter with directions to the court to determine if defendant's diagnosed mental condition made it "seriously difficult" for him to control his criminal sexual behavior, thereby justifying civil commitment under the Illinois SDPA. *People v. Gilford*, 336 Ill. App. 3d 722, 730, 784 N.E.2d 841 (2002). In the opinion, we deemed it necessary to remand the matter because the United States Supreme Court decision in *Kansas v. Crane*, 534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002), was announced after defendant's commitment hearing was held, and therefore, the trial court never made a determination as to whether defendant's mental condition made it seriously difficult for him to control his criminal sexual behavior as required by *Crane*. See *Gilford*, 336 Ill. App. 3d at 736. The State responded by filing a petition for leave to appeal to the Illinois Supreme Court.

Our supreme court denied the State's petition for leave to appeal, but under its supervisory authority, directed us to vacate our opinion and reconsider our judgment in light of *In re Detention of Varner*, 207 Ill. 2d 425, 800 N.E.2d 794 (2003). See *People v. Gilford*, 206 Ill. 2d 630, 799 N.E.2d 679 (2003). Pursuant to the supervisory order, we vacated our opinion and now file this opinion in its stead.

After reconsidering our judgment in light of *Varner*, we again vacate the trial court's judgment and remand the matter with directions to the court to ascertain if defendant's mental condition makes it seriously difficult for him to control his criminal sexual behavior, thereby justifying civil commitment under the Illinois SDPA.

Unlike the present case, which concerns the constitutionality of a civil commitment under the Illinois SDPA, *Varner* involved the constitutionality of a civil commitment proceeding under the Sexually Violent Persons Commitment Act (Illinois SVPA) (725 ILCS 207/1 *et seq.* (West 1998)). The facts and procedural history in *Varner* are as follows.

Herbert Varner pled guilty to criminal sexual abuse of his five-year-old niece and was sentenced to 13 years' imprisonment. *Varner*, 207 Ill. 2d at 426. When Varner's prison term was ending and he was scheduled for entry into mandatory supervised release, the State initiated civil commitment proceedings against him pursuant to the Illinois SVPA, which permits the indefinite commitment of an individual found by a trier of fact to be sexually violent beyond a reasonable doubt. See 725 ILCS 207/35(f) (West 1998).

The jury found Varner to be a sexually violent person, and the circuit court entered an order committing him to the custody of the Illinois Department of Human Services for institutional care and treatment at a secure facility. See *Varner*, 207 Ill. 2d at 428. The appellate court affirmed (*In re Detention of Varner*, 315 Ill. App. 3d 626, 734 N.E.2d 226 (2000)), as did our supreme court (*In re Detention of Varner*, 198 Ill. 2d 78, 759 N.E.2d 560 (2001)).

Varner petitioned to the United States Supreme Court, arguing that the Illinois SVPA was unconstitutional because it allowed him to be subject to civil commitment without a specific finding that he lacked volitional control over his sexually criminal behavior. The Supreme Court vacated the judgment and remanded the matter for further consideration in light of *Crane*. See *Varner v. Illinois*, 537 U.S. 802, 154 L. Ed. 2d 3, 123 S. Ct. 69 (2002).

In *Crane*, the issue was whether the Kansas Supreme Court was correct in interpreting *Kansas v. Hendricks*, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997), as holding that in order for the state to involuntarily commit an individual as a sexually violent predator without violating

his substantive due process rights, the state was required to prove that he lacked "total or complete control" over his sexually violent behavior. *Crane*, 534 U.S. at 410-11, 151 L. Ed. 2d at 861, 122 S. Ct. at 869.

In *Hendricks*, the Supreme Court had determined that the Kansas SVPA satisfied substantive due process because it restricted civil commitment to individuals who had previously committed a sexually violent act and who had a present mental abnormality or personality disorder that made it difficult, if not impossible, for the person to control his sexually violent behavior. *Hendricks*, 521 U.S. at 358, 138 L. Ed. 2d at 513, 117 S. Ct. at 2080. The Court emphasized that Hendricks' diagnosis as a pedophile and his self-admitted lack of volitional control, coupled with predictions by mental health professionals of his future dangerousness, adequately distinguished him from other dangerous persons who were more properly dealt with through criminal proceedings. *Hendricks*, 521 U.S. at 360, 138 L. Ed. 2d at 514, 117 S. Ct. at 2081.

The Supreme Court reaffirmed and clarified its *Hendricks* decision in *Crane*. In *Crane*, unlike *Hendricks*, there was no evidence in the record suggesting that Crane was unable to control his behavior. *Crane*, 534 U.S. at 417, 151 L. Ed. 2d at 865, 122 S. Ct. at 872 (Scalia, J., dissenting, joined by Thomas, J.). Crane, relying on the decision in *Hendricks*, argued, and the Kansas Supreme Court agreed, that in order to satisfy substantive due process the state was required to establish that an offender lacked total or complete control over his sexually violent behavior before he could be civilly committed.

The *Crane* Court disagreed, stating that "[i]nsistence upon absolute lack of control would risk barring the civil commitment of highly dangerous persons suffering severe mental abnormalities." *Crane*, 534 U.S. at 412, 151 L. Ed. 2d at 862, 122 S. Ct. at 870. The Court determined that although the state was not required to prove that an offender lacked total or complete control over his sexually violent behavior, the state must at least provide factual proof that the offender had some serious difficulty controlling his criminal sexual behavior. *Crane*, 534 U.S. at 413, 151 L. Ed. 2d at 862-63, 122 S. Ct. at 870.

The *Crane* Court concluded that a lack-of-control determination was necessary in order to maintain the distinction between the "dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Crane*, 534 U.S. at 413, 151 L. Ed. 2d at 863, 122 S. Ct. at 870. The Court, however, pointing to the ever-advancing science of psychiatry, declined to establish a precise standard for determining the extent to which a sex offender must lack control before he may be found to have serious difficulty in controlling his behavior and, instead, gave each state leeway to make that determination through an interpretation of its own statute. *Crane*, 534 U.S. at 413, 151 L. Ed. 2d at 863, 122 S. Ct. at 871.

When the Illinois Supreme Court reconsidered Varner's case in light of *Crane*, the court concluded that *Crane* did not require a separate finding that Varner lacked volitional control over his sexually violent behavior. *Varner*, 207 Ill. 2d at 432. The supreme court determined that there was no need for such a separate finding, reasoning that the Illinois SVPA contained statutory definitions regarding "sexually violent person" and "mental disorder" that supplied the constitutionally required elements for civil commitment, and therefore, a jury properly instructed with these definitions did not require additional instructions concerning an offender's volitional control over his sexually violent behavior. *Varner*, 207 Ill. 2d at 432-33.

In *People v. Masterson*, 207 Ill. 2d 305 (2003), our supreme court noted that unlike the Illinois SVPA applied in *Varner*, the current version of the Illinois SDPA did not contain a statutory definition of the term "mental disorder" that specifically linked that disorder to an impairment of volitional capacity, nor did the statute provide a standard for "gauging the probability or likelihood that the subject of the proceeding will commit sexual offenses in the future." *Masterson*, 207 Ill. 2d at 329. In an effort to bring the Illinois SDPA into compliance with *Crane*, the supreme court read the definition of "mental disorder" contained in the Illinois SVPA into the Illinois SDPA.

Thus, the *Masterson* court construed the term "mental disorder," as used in the Illinois SDPA, to mean a "congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in the commission of sex offenses and results in serious difficulty controlling sexual behavior." *Masterson*, 207 Ill. 2d at 329. The *Masterson* court also "clarified" that in order for a person to be committed under the Illinois SDPA, the State must prove beyond a reasonable doubt that the person is a sexually dangerous person pursuant to section 1.01 of the SDPA and there must be an additional "explicit finding that it is 'substantially probable' the person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined." *Masterson*, 207 Ill. 2d at 330.

In the present case, the trial court did not have the benefit of either *Crane* or *Masterson* when it conducted defendant's commitment hearing. Thus, the trial court never made a lack-of-control determination as required by these decisions.

The State contends, however, that defendant's diagnosis of paraphilia amply meets the "serious difficulty" requirement under *Crane*. Moreover, at oral argument, the State maintained that defendant's diagnosis as a pedophile necessarily implied that he lacked volitional capacity such that he has serious difficulty in controlling his behavior. We cannot agree with the State's position.

In the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), the authority relied upon by the State-appointed clinicians in this case, the manual cautions:

"[T]he fact that an individual's presentation meets the criteria for a DSM-IV diagnosis does not carry any necessary implication regarding the individual's degree of control over the behaviors that may be associated with the disorder. Even when diminished control over one's behavior is a feature of the disorder, having the diagnosis in itself does not demonstrate that a particular individual is (or was) unable to control his or her behavior at a particular time." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders DSM-IV-TR*, at xxxiii (4th rev. ed. 2000).

This introductory commentary in the DSM-IV indicates that defendant's diagnosis as a pedophile does not necessarily imply that he lacks volitional capacity such that he has serious difficulty in controlling his behavior. Consequently, the judgment of the trial court must be vacated and remanded with directions to determine whether defendant's mental condition causes him to have serious difficulty in controlling his criminal sexual behavior.

The "serious difficulty" finding required by the State's petition should be made by the trier of fact, which is in a superior position to hear the expert testimony, weigh the evidence, and decide if defendant's diagnosed mental condition makes it seriously difficult for him to control his behavior, thereby justifying civil commitment under the Illinois SDPA. See, e.g., *In re*

*Detention of Hughes*, 346 Ill. App. 3d 637, 654-55, 805 N.E.2d 725 (2004) (reversing and remanding for a determination of whether defendant's mental condition caused the required degree of inability to control his sexually dangerous behavior).

Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County is vacated and the cause is remanded to the court for a new commitment hearing wherein the parties will have a full and fair opportunity to adduce evidence pertinent to the applicable standards announced. See, *e.g.*, *Masterson*, 207 Ill. 2d at 330; *In re Detention of Hughes*, 346 Ill. App. 3d at 654-55. We retain jurisdiction for the purpose of reviewing the trial court's determination following the commitment hearing, and the defendant and the State will be allowed to submit supplemental briefs addressing this issue in this court.

Vacated and remanded with directions.

WOLFSON and SOUTH, JJ., concur.

1. In order to establish that an offender is a sexually dangerous person, the State must prove beyond a reasonable doubt that the offender suffers from a mental disorder which existed for a period of not less than one year immediately prior to the filing of the petition, that the mental disorder is associated with criminal propensities to the commission of sex offenses, and that the offender has actually demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children. See 725 ILCS 205/1.01 (West 1996); *People v. Thorpe*, 52 Ill. App. 3d 576, 582, 367 N.E.2d 960 (1977).